IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Candace Thompson,<br><br>        Plaintiff,<br>v.<br><br>TWC Administration LLC,<br><br>        Defendant. | C/A. No. 3:16-cv-3903-CMC<br><br>**Opinion and Order** |

Through this action, Plaintiff Candace Thompson ("Plaintiff") seeks recovery from her former employer, TWC Administration LLC ("TWC"), for alleged employment discrimination based on race, retaliation, and hostile work environment pursuant to 42 U.S.C. § 2000e, *et seq.*, and a violation of the Family Medical Leave Act (FMLA). ECF. No. 1. The matter is before the court on Defendant's Motion for Summary Judgment, filed March 7, 2018. ECF No. 53. Plaintiff filed her response in opposition on March 30, 2018, after being granted an extension. ECF No. 59. Defendant filed a reply on April 16, 2018. ECF No. 63.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings and a Report and Recommendation ("Report"). On November 29, 2018, the Magistrate Judge issued a Report recommending that Defendant's motion for summary judgment be granted. ECF No. 84. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed her objections on December 13, 2018. ECF No. 85. TWC filed a reply on December 27, 2018. ECF No. 86. This matter is now ripe for resolution.

After conducting a *de novo* review as to the objections made, and considering the record, the applicable law, and the Report and Recommendation of the Magistrate Judge, the court agrees with the Report's recommendation that TWC's motion for summary judgment should be granted. Accordingly, the court adopts the Report by reference in this Order. For the reasons stated in the Report and as further addressed below, TWC is entitled to summary judgment on all claims.

**I.  Standard**

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976).  The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).  The court reviews only for clear error in the absence of an objection.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the district court must "view the evidence in the light most favorable to the nonmoving party." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (citing *Tolan v. Cotton*, 134 S.Ct. 1861, 1868 (2014) (per curiam)). "Summary Judgment cannot be granted merely because the court believes that the movant will

prevail if the action is tried on the merits." *Id.* Therefore, the court cannot weigh the evidence or make credibility determinations. *Id.* at 569. The district court may not "credit[] the evidence of the party seeking summary judgment and fail[] properly to acknowledge key evidence offered by the party opposing that motion." *Id.* at 570. However, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## II. Discussion

### a. Race Discrimination Claim

#### i. <u>Magistrate Judge's recommendations and Parties' arguments</u>

The Magistrate Judge concluded Plaintiff does not have direct evidence of discrimination and cannot establish her claim for racial discrimination under the burden-shifting method of proof. ECF No. 91 at 11. The Report recommends dismissal of Plaintiff's discrimination claim because she has failed to show her job performance was satisfactory at the time of her termination. *Id.* at 13-14. It also found Plaintiff failed to create an issue of fact as to whether her purported comparators are valid. *Id.* at 15-16. Regarding Plaintiff's disparate treatment claim involving the investigation of Plaintiff and her team, the Report recommends dismissal as an investigation is not an adverse employment action, and, even if it was, there is no valid comparator. Id. at 17-18. The Magistrate Judge found Plaintiff's failure to promote claim fails because the purported promotion

3

would have been temporary, and therefore would not be an adverse employment action.[1] *Id.* at 20. The Report concluded even if Plaintiff did establish a prima facie case of discrimination, TWC met its burden of producing legitimate, non-discriminatory reasons for terminating Plaintiff, which Plaintiff was unable to demonstrate were pretext. *Id.* at 21.

Plaintiff objected to the Report, arguing there are genuine issues of material fact precluding summary judgment. ECF No. 85. Specifically, she objected to the determination she failed to demonstrate race was a motivating factor in her termination, as "[d]eposition testimony has shown the Defendant has demonstrated a pattern of discriminatory treatment towards African Americans by failing to continue to employ them." *Id.* at 3. She contends there are valid comparators who are "in the same job, doing the same things." *Id.* at 4. Finally, she argues TWC should have determined who made the customer complaint leading to the investigation and why the complaint was not "provided to the employees so they could try to figure out what, if anything, had occurred." *Id.*

In its reply to Plaintiff's objections, TWC argues Plaintiff failed to present specific objections, record citations, or applicable case law establishing the Magistrate Judge erred in recommending summary judgment. ECF No. 86. It points out Plaintiff's objections do not challenge the Magistrate Judge's recommendation on the failure to promote, retaliation, hostile work environment, or FMLA claims, and the Magistrate Judge did not commit clear error in recommending summary judgment. *Id.* at 3-4. TWC also argues Plaintiff does not explain how

---

[1] Plaintiff did not object to the Magistrate Judge's finding regarding her failure to promote claim. However, the court does note the supervisory position was an interim one, and another black employee was placed in that position. Therefore, finding no clear error, the court holds summary judgment on the failure to promote claim is appropriate, and it is dismissed with prejudice.

the Magistrate Judge erred regarding her job performance or valid comparators. *Id.* at 5-6. Finally, it notes Plaintiff's "supposed evidentiary concerns regarding a customer complaint were fully and properly addressed by the Magistrate Judge," and should not be overturned based on speculation. *Id.* at 6-7.

ii. Background

From approximately October – December 2015, TWC held a Starz programming incentive, in which representatives would be rewarded for selling Starz programming. ECF No. 53-3 at 21 (Plaintiff dep. at 102:1-18). Plaintiff and another representative on her team won this Q4 Starz contest. *Id.* at 40 (Plaintiff dep. 145:14-146:12). In early December 2015, TWC received a complaint in which a customer complained she was being charged for Starz programming even though the retention representative told her it would be free. ECF No. 53-10 at ¶ 26 (Owen decl.). An investigation followed, which revealed Plaintiff was the retention representative who assisted the customer. *Id.* at ¶ 27. Plaintiff had removed the $8 modem lease fee (charged to customers who rent TWC-owned modems instead of using their own) to offset the Starz fee of the same amount. *Id.* at ¶¶ 28-29; ECF No. 53-3 at 35 (Plaintiff dep. at 132:9-133:8). In doing so, she fraudulently entered a specific code in the customer's account indicating he or she owned the modem, even though the customer continued to use a TWC-owned modem. ECF No. 53-10 at ¶ 30.

Plaintiff's manager, Emma Brown, became involved in analyzing a sample of Plaintiff's call recordings and in meeting with Plaintiff, during which Plaintiff indicated other representatives engaged in similar conduct. *Id.* at ¶¶ 34, 36. Plaintiff was placed on a written warning for violation of rules, which specifically states "[a]gents should not remove Modem Lease Fees by changing TWC equipment to Customer Owned equipment." ECF No. 53-17 (Coaching Form). Based on

her investigation, Brown requested an audit of every customer account in which a Columbia-based retention representative removed a modem lease fee and added a Starz fee during a Q4 Starz competition, which was approved by Owen, the Senior Director of Retention. ECF No. 53-10 at ¶¶ 37-38. The investigation confirmed Plaintiff removed the modem lease fee and added Starz programming on at least 28 customer accounts. ECF No. 53-18 at 2; ECF No. 53-3 at 47 (Plaintiff dep. at 155:1-14).

On January 13, 2016, Plaintiff was called into a meeting with human resources representatives to discuss the findings of the investigation. ECF No. 53-18 at 2; ECF No. 53-3 at 47 (Plaintiff dep. at 152:1-8). In this meeting, Plaintiff stated removing the modem lease code and adding a Starz package "should not be done." ECF No. 53-18 at 2 (Thompson Security Narrative). She indicated she had done so in the past to help retain a customer. *Id.* At the end of the meeting, Plaintiff "was apologetic for misleading customers and TWC" and provided a written statement admitting her misconduct and apologizing. *Id.*; ECF No. 53-3 at 46-47 (Plaintiff dep. at 154:20-155:21). Plaintiff was suspended with pay for the duration of the investigation. ECF No. 53-3 at 49-50 (Plaintiff dep. at 162:24-163:4).

At the conclusion of the investigation, Owen decided to terminate Plaintiff's employment based on the investigation because he "believed [Plaintiff] had lied to customers and fraudulently removed modem lease fees on at least 28 instances, in violation of numerous TWC policies, and in flagrant disregard of TWC's May 2015 express reminder forbidding that very practice." ECF No. 53-9 at ¶ 52. Human Resources also recommended the termination.[2] ECF No. 53-6 at 10

---

[2] Human Resources also recommended Plaintiff's supervisor, Cunningham, as well as Williams and Maeitta Scarborough (another representative not on Plaintiff's team) be terminated for this
Footnote Continued . . .

6

(Owen dep. at 12:11-15). Plaintiff received a phone call on January 21, notifying her of her termination. ECF No. 53-3 at 450 (Plaintiff dep. at 163:5-164:8).

      iii. Analysis

Although Plaintiff presents general arguments regarding the Magistrate Judge's conclusions, she fails to provide specific record evidence or case law in support of her challenges. Further, the court agrees with the Magistrate Judge Plaintiff has failed to demonstrate her job performance was satisfactory at the time of her termination, or to provide a valid comparator. Despite Plaintiff's assertions she "was performing her job adequately," she does not dispute the conduct of swapping modem fees for Starz fees at least 28 times, and acknowledged this "should not have been done" as it "misl[ed] customers and TWC." ECF No. 53-18 at 2. TWC has presented evidence she violated its policies, and Plaintiff was placed on a written warning for this conduct. ECF No. 53-17.

While Plaintiff provided two names of employees she asserts were similarly situated, the court agrees neither Chris Carriere nor Paula Russell are valid comparators. Ms. Russell is a manager of another team and so does not have the same position as Plaintiff. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272-73 (4th Cir. 2005) (finding the plaintiff's purported comparators did not establish pretext when they held "positions dissimilar" to the

---

conduct. ECF No. 53-7 at 12 (Falgout dep. at 16:1-8). Ultimately, Thompson, Cunningham, Williams, Eireka Nickson (Plaintiff's team member) and Scarborough were terminated. ECF No. 53-9 at ¶ 64. Christopher Carriere, a white male on Plaintiff's team, and Charanee Stephens, a black female representative not on Plaintiff's team, were suspended with pay but ultimately not terminated as less culpable. *Id.* at ¶¶ 66-67. Alexis Green and Terri Johnson, two additional black female representatives on Plaintiff's team, were not terminated because the investigation did not reveal they engaged in misconduct. *Id.* at ¶ 65.
Footnote Continued . . .

7

plaintiff, with different "job requirements and responsibilities"). Further, although there is evidence Russell instructed her team to remove modem fees, there is no evidence she switched out modem fees for premium-service fees during a promotion to sell such a service. Mr. Carriere[3] did have the same position and reported to the same manager as Plaintiff; however, he only removed the fee seven times to Plaintiff's 28, and thus their conduct was significantly different. Further, Carriere was a newer employee than Plaintiff, who had been employed with TWC since 2013, and Carriere had been instructed by a senior representative to remove the modem fees. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful."); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992)) (employees are similarly situated if they "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.").

Finally, the court agrees the Magistrate Judge sufficiently addressed the argument regarding the customer complaint, and Plaintiff's speculative assertion that it may not have come from a customer at all is insufficient to create a genuine issue of material fact. Further, the court questions the relevance of the source of the complaint: although the complaint did lead to the investigation, Plaintiff does not challenge she removed modem fees to cancel out the Starz channel fee, which is the conduct that resulted in her termination. It does not matter how TWC discovered

---

[3] Carriere and Plaintiff were both suspended, but Plaintiff was terminated after her conduct was revealed to be more pervasive than his. A black female retention representative who removed the modem fee seven times, like Carriere, was suspended but not terminated: receiving the same treatment for the same conduct as Carriere, a white man. ECF No. 60-10, Owens Dec. at ¶ 67.

this activity, as the court agrees with the Magistrate Judge that the investigation is not, in itself, an adverse employment action. *See Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) ("Even if these investigations were improper or substandard, that does little to help [plaintiff] establish that the reasons given for her termination were not the actual reasons, and it certainly does not give rise to a reasonable inference that her race or gender was the real reason for her termination."); *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) ("Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it.").

Therefore, Plaintiff's objections regarding her discrimination claim are overruled and the court agrees with the Magistrate Judge's conclusion regarding this claim. Summary judgment for TWC is appropriate.

b. *Retaliation, Hostile Work Environment, and FMLA Claims*

The Report recommends summary judgment on the retaliation claim, as Plaintiff effectively conceded she did not complain of racial discrimination to anyone at TWC, and filed her complaint with the Human Affairs Commission after her termination. ECF No. 84 at 26. The Magistrate Judge also recommends dismissal of the hostile work environment claim for failure to exhaust administrative remedies, as her SCHAC/EEOC charge does not allege a hostile work environment. *Id.* at 30. In the alternative, the Magistrate Judge found Plaintiff's substantive allegations regarding hostile work environment fail to support such a claim. *Id.* at 30-31. Finally, the Magistrate Judge concluded TWC set forth a legitimate, nondiscriminatory reason for Plaintiff's termination, unrelated to her use of FMLA leave. *Id.* at 32. For many of the same

reasons her disparate treatment claims fail, Plaintiff has failed to demonstrate this reason was pretextual. *Id.*

Plaintiff's objections (ECF No. 85) do not address any of these three claims; therefore, review of the Report on these issues is for clear error. Finding none on the retaliation and FMLA claims, the court adopts the Report on these issues. As to the hostile work environment claim, the court finds no clear error in the Magistrate Judge's recommendation to dismiss this claim as the allegations fail to support it.[4] Summary judgment is appropriate, and Plaintiff's retaliation, hostile work environment, and FMLA claims are dismissed with prejudice.

## III. Conclusion

Having conducted a *de novo* review of the Report and underlying motion and related memoranda where necessary, and having fully considered Plaintiff's objections and TWC's response, the court adopts the conclusions of the Report. Defendant's motion for summary judgment is **granted** and this matter is dismissed with prejudice.

**IT IS SO ORDERED**.

> s/Cameron McGowan Currie
> CAMERON MCGOWAN CURRIE
> Senior United States District Judge

Columbia, South Carolina
January 24, 2019

---

[4] The Fourth Circuit recently clarified a claim can be raised for the first time before the district court if the factual allegations are "reasonably related to charges in the original administrative complaint, and if they reasonably could have developed from the agency's investigation of the original complaint." *Stewart v. Iancu*, __ F.3d __, 2019 WL 122868 (4th Cir. 2019). However, as the Magistrate Judge considered the hostile work environment claim on the merits as well as on failure to exhaust (and Plaintiff failed to object to either), this court adopts the Report only on the merits determination and need not reach the failure to exhaust issue.